UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM BRINSON BALL,

v.                              Case No. 8:18-cr-69-VMC-AAS
                                        8:22-cv-2301-VMC-AAS

UNITED STATES OF AMERICA.

_____/

**ORDER**

This matter is before the Court on William Brinson Ball's pro se 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 53), filed on October 3, 2022. Mr. Ball filed an amended Motion on December 27, 2022. (Civ. Doc. # 12). The United States of America responded on January 25, 2023. (Civ. Doc. # 14). Mr. Ball filed a reply on May 24, 2023. (Civ. Doc. # 21). For the reasons that follow, the Motion is denied.

I.   **Background**

On February 15, 2018, a grand jury indicted Mr. Ball of attempting to induce a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) and transporting child pornography in violation of 18 U.S.C. § 2252(a)(1) and (b)(1). (Crim. Doc. # 1). On April 30, 2018, Mr. Ball pled guilty to both counts of the indictment. (Crim. Doc. # 36).

1

At the change of plea hearing, Magistrate Judge Amanda Arnold Sansone asked Mr. Ball, who was under oath, a number of questions regarding his guilty plea. She first assured that he had sufficient education to read the documents in his case and that he was not under the influence of any intoxicating substances. (Crim. Doc. # 89 at 4-5). She next confirmed that Mr. Ball had reviewed the charges, evidence, and his option to go to trial with his attorney, Mr. Franklyn Louderback. (Id. at 5-6). She asked Mr. Ball if he was "fully satisfied with the advice and representation" of Mr. Louderback, to which he responded "[y]es, Your Honor." (Id.). She also confirmed that he had read each page of the plea agreement, had discussed it with Mr. Louderback, and that Mr. Louderback had answered any questions he had. (Id. at 7). She next read the most significant terms of his plea agreement with the government and ensured that Mr. Ball understood those terms. (Id. at 7-9).

Judge Sansone next asked Mr. Ball whether he had been "threatened," "coerced," or "force[d]" to plead guilty, to which he responded "[n]o, your honor." (Id. at 10). She asked him if he was "pleading guilty, then, freely and voluntarily?" (Id.). He responded "[y]es, Your Honor." (Id.). She also

confirmed that he understood that his plea agreement included an appellate waiver. (Id. at 14-15).

The factual basis in the plea agreement included several relevant facts. "[T]he defendant used his Application A account username 'iwillwaitforher' and display name 'Pervy Daddy,' to [communicate with] X.X., whom the defendant believed to be a person with whom he had previously exchanged child-pornographic images and/or videos. The defendant, however, was actually messaging an HSI special agent acting in an undercover capacity." (Crim. Doc. # 36 at 21). They began messaging about arranging a "sexual encounter with [a] seven-year old child." (Id. at 23). Copies of these messages show that the undercover agent told Mr. Ball that the encounter would happen in the "Florida gulf" and that the child's dad would take Mr. Ball and the child "out on his boat in the gulf." (Civ. Doc. # 1-1 at 8-9). The undercover agent connected Mr. Ball with another undercover agent, with whom Mr. Ball began planning the encounter, and leading Mr. Ball to wire $5,000 to the agent. (Crim. Doc. # 36 at 24). Mr. Ball confirmed with the second undercover agent that he booked air travel from Dubai to Miami, but then missed his flight and had to fly from Dubai to Orlando. (Id.). He further explained his plans with the undercover agent, including

3

purchasing condoms and sex toys once he landed in Florida. (Id. at 25).

Once arriving in Florida, Mr. Ball arrived at the predetermined meeting location, made contact with the undercover agent, and was arrested. (Id. at 26). A search incident to arrest found a bag containing a child's stuffed animal, various lubricants, sexual devices, and numerous condoms. (Id.). He also had an iPhone SE, which forensic analysis showed to contain the following: 493 child-pornographic images and 42 child-pornographic videos, many of which were sadistic in nature, and the three videos that had been sent from the undercover agent to Mr. Ball. (Id. at 27).

Judge Sansone asked Mr. Ball specifically if he agreed with the factual basis listed in the plea agreement. (Crim. Doc. # 89 at 23). He only had one correction to make, noting that he actually flew into Orlando instead of into Fort Lauderdale from Dubai. (Id. at 23-24). Judge Sansone stated that she would note this correction in the Report & Recommendation ("R&R"). (Id.). Mr. Ball then confirmed that he agreed with all other facts in the plea agreement. (Id.).

On April 30, 2018, Judge Sansone entered her R&R, recommending that the plea agreement and plea of guilty be

accepted. (Crim. Doc. # 33). Neither party filed any objections to the R&R.

On October 25, 2018, the sentencing hearing was held in front of Judge Elizabeth A. Kovachevich. (Crim. Doc. # 57). There are a few events from the hearing worth noting. At the hearing, Mr. Louderback called Dr. Peter Bursten as an expert witness. (Crim. Doc. # 84 at 11-13). Mr. Louderback had retained Dr. Bursten to review documents related to the case, meet with Mr. Ball, and perform a psychological evaluation of Mr. Ball. (Id. at 19-20). He diagnosed him with "an other specified pedophilia disorder," but also stated that he believes Mr. Ball would benefit from "sex offender treatment." (Id. at 28). He also testified that Mr. Ball told him that he was first exposed to "child pornographic material" 18 months prior to his arrest. (Id. at 39). Mr. Louderback orally moved for a downward variance "to or near the 120-month minimum sentence that is mandated by Count One," based upon his acceptance of responsibility and his lack of criminal record. (Id. at 66). He also argued that Mr. Ball should not be sentenced at the top of guidelines range because he would benefit from treatment and his age at the time of his release suggested a low rate of recidivism. (Id. at 79-81).

Judge Kovachevich then delivered her sentence. She noted that her "first responsibility is to protect the community from [Mr. Ball]." (Id. at 81). She then added that Mr. Ball has "an opportunity to get all the treatment [he] can possibly get [while incarcerated]," and that his "problem, which is serious, needs treatment long term, as well as keeping [him] from the community during those years when [he] would still have the opportunity to act out." (Id. at 81-82). She concluded that a sentence at the low-end of the guidelines was adequate, and sentenced Mr. Ball to 262 months on Count One and 240 months on Count Two, with each sentence running concurrently. (Id. at 83). She denied the motion for a downward variance. (Id.).

Mr. Ball filed his notice of appeal on November 9, 2018. (Crim. Doc. # 67). On appeal, he argued that applying the statute extraterritorially is unconstitutional and that his conduct did not violate the statute. (Crim. Doc. # 111 at 2). The Eleventh Circuit found that, due to the appellate waiver and his acknowledgement that he had committed crimes that would violate Florida law, his claim was partially foreclosed "to the extent it is based on his contention that § 2422(b) does not reach sexual conduct that would have occurred in international waters and would not have violated Florida

6

law." (Id. at 3-4). However, the Eleventh Circuit noted that "the plea agreement also described conduct that presumably occurred from Dubai." (Id.). Accordingly, the Eleventh Circuit found that "[t]o the extent Ball argues § 2422(b) does not reach this conduct, this argument is not inconsistent with his guilty plea and therefore not waived." (Id.). Applying a plain error standard, the Eleventh Circuit rejected Mr. Ball's claim, holding that "[b]ecause neither the Supreme Court nor this Court has addressed whether § 2422(b) extends to conduct occurring outside the United States, and the statute itself does not specifically resolve this issue, we cannot say the district court plainly erred even if it applied the statute extraterritorially." (Id.).

Now, Mr. Ball seeks to vacate his convictions, citing numerous claims of ineffective assistance of both plea and appellate counsel, due process violations, and alleging that the district court erred by applying § 2422(b) extraterritorially. (Civ. Doc. # 12). The government responded in opposition (Civ. Doc. # 14), and filed an affidavit from Mr. Louderback as an exhibit. (Civ. Doc. # 14-1). Mr. Ball filed a reply. (Civ. Doc. # 21). The Motion is ripe for review.

## II. **Legal Standard**

Mr. Ball bears the burden of proving that he is entitled to relief under Section 2255. See <u>LeCroy v. United States</u>, 739 F.3d 1297, 1321 (11th Cir. 2014) ("[O]n a § 2255 petition, [the burden of proof] belongs to the petitioner."). "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." <u>Lynn v. United States</u>, 365 F.3d 1225, 1234-35 (11th Cir. 2004). "This rule generally applies to all claims, including constitutional claims." <u>Id.</u> A petitioner "can avoid a procedural bar only by establishing one of the two exceptions to the procedural default rule. Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." <u>Id.</u> "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Id.</u> (internal quotations and citations omitted).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, Mr. Ball must demonstrate by a preponderance of the evidence "that particular and identified acts or omissions of counsel were outside the wide range of professionally competent assistance." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (internal citations and quotations omitted). In other words, Mr. Ball must show that "no competent counsel would have taken the action that [his] counsel did take." Id. at 1315. In deciding whether an attorney's performance was deficient, courts are "highly deferential" and "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal quotation marks omitted).

To satisfy Strickland's second prong — prejudice — Mr. Ball must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient

to undermine confidence in the outcome." Id. "To establish prejudice in the context of a guilty plea, [Mr. Ball] must show that there is a 'reasonable probability that, but for counsel's unprofessional errors,' he would not have entered a guilty plea and would have insisted on going to trial." Solomon v. United States, No. 1:10-CR-376-RWS-CCH, 2012 WL 1900138, at *2 (N.D. Ga. May 2, 2012) (citation omitted), report and recommendation adopted, No. 1:10-CR-0376-RWS, 2012 WL 1900136 (N.D. Ga. May 24, 2012). "[I]f a claim fails to satisfy the prejudice component, the Court need not make a ruling on the performance component." Ortiz v. United States, No 8:15-cr-409-VMC-JSS, 2017 WL 6021645, at *2 (M.D. Fla. Jan. 11, 2017).

"[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." Brownlee v. Haley, 306 F.3d 1043, 1060 (11th Cir. 2002) (citation omitted). "The decision whether to present a line of defense, or even to investigate it, is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable." Id. (internal quotation and citation omitted);

see also Stephens v. United States, 14 F. Supp. 2d 1322, 1331 (N.D. Ga. 1998) ("A decision not to investigate a potential defense, like other litigation decisions, need only be reasonable to fall within the range of professionally competent assistance." (citation omitted)).

"[T]he Eleventh Circuit has held that 'a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing.'" Krecht v. United States, 846 F. Supp. 2d 1268, 1279 (S.D. Fla. 2012) (quoting Williams v. United States, 396 F.3d 1340, 1342 (11th Cir. 2005)).

Additionally, "[i]n cases where the files and records make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984).

## III. **Analysis**

Mr. Ball organizes his grounds into three categories, and then divides the grounds into several sub-claims. (Civ. Doc. # 12). The Court will organize his claims under the sub-claim categories. These claims are: counsel's failure to

investigate his case (Claim 1.1); counsel's failure to suppress evidence (Claim 1.2); counsel's failure to hire a forensics expert (Claim 1.3); counsel's failure to explain the elements of the crimes such that his plea was not knowing and voluntary (Claim 1.4); counsel's failure to seek dismissal of Count One (Claim 1.5); counsel's failure to inform him that a conviction would negate his ability to sponsor his wife's visa (Claim 1.6); counsel's ineffective assistance at sentencing (Claim 1.7); the government's deception leading Mr. Ball to believe that his conduct was legal (Claim 2.1); the government's post-Miranda interrogation (Claim 2.2); the government's breach of the plea agreement (Claim 2.3); and that Section 2422(b) was inapplicable to his conduct, such that Count One should have been dismissed (Claim 3.1). (Id.).

## A. Claim 1.1

Mr. Ball asserts that Mr. Louderback failed to adequately investigate his case, such that he failed to unearth "exculpatory and mitigating evidence, significantly altering the outcome of the underlying criminal proceeding." (Civ. Doc. # 12-2 at 14). He specifically alleges that he should have "prepare[d] witnesses, request[ed] a forensic analysis of evidence (e.g. iPhone), and seek suppression

12

ahead of any upcoming hearings." (Id. at 15). The only hearing Mr. Ball identifies is the arraignment, where he alleges he was deprived of the opportunity "to adversarially test the government's discovery." (Id. at 14).

In his affidavit, Mr. Louderback averred that he "travelled to the Homeland Security (HSI) Office to physically view the evidence." (Civ. Doc. #14-1 at 3). Mr. Ball acknowledges that Mr. Louderback visited law enforcement in possession of the iPhone and viewed the evidence, leading Mr. Louderback to conclude that the evidence was correct. (Id. at 17). Once Mr. Louderback reached this conclusion, his decision not to further investigate the iPhone's content was reasonable and cannot constitute deficient performance. See Brownlee, 306 F.3d at 1060 ("The decision whether to present a line of defense, or even to investigate it, is a matter of strategy and is not ineffective unless the petitioner can prove that the chosen course, in itself, was unreasonable." (internal quotation and citation omitted)); Streeter v. United States, 335 F. App'x 859, 863-64 (11th Cir. 2009) ("Counsel does not render ineffective assistance by deciding not to pursue a particular line of defense without substantial investigation, so long as the decision was reasonable under the circumstances." (internal quotations omitted)).

Mr. Ball does not identify any other specific evidence that Mr. Louderback could have discovered with further investigation. See Chandler, 218 F.3d at 1314 (requiring that deficient performance be established with "particular and identified acts or omissions of counsel"). Regardless, Mr. Ball did not suffer any prejudice due to this supposed failure by Mr. Louderback. He claims the failure to investigate denied him the right to "test the government's discovery" at the arraignment (Civ. Doc. # 12-2 at 14), but he was arraigned on an indictment (Crim. Doc. # 1), and not entitled to a preliminary hearing. Fed. R. Crim. P. 5.1(a)(2).

Having found that Mr. Ball has established neither deficient performance nor prejudice as a result of Mr. Louderback's alleged failure to investigate, the Court denies the Motion as to Claim 1.1.

**B. Claim 1.2**

Mr. Ball next alleges that Mr. Louderback provided ineffective assistance of counsel by failing to move to suppress evidence, specifically evidence obtained from his rental car, the contents of his iPhone, and his post-Miranda statements. (Id. at 15-17).

"[W]here a petitioner faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both

14

the deficient performance and prejudice prongs of <u>Strickland</u> turn on the viability of the motion to suppress." <u>Arvelo v. Sec'y, Fla. Dep't of Corr.</u>, 788 F.3d 1345, 1348 (11th Cir. 2015).

Mr. Louderback was not ineffective for failing to move to suppress the contents of Mr. Ball's rental car. Mr. Ball claims that "the government agent invited himself in Ball's vehicle without Ball's consent . . . the agent took Ball's bag, searched it, and performed a warrantless search around the vehicle." (Civ. Doc. # 12-2 at 15). This is an inaccurate account of what transpired. Mr. Ball met the undercover agent, whom he believed to be a co-conspirator, in a parking lot and the agent entered Mr. Ball's car to discuss the next steps. (Civ. Doc. # 1-1 at 160-161). There is no indication that the agent forced his way into the car against Mr. Ball's wishes, as Mr. Ball said nothing to that effect during the incident. (<u>Id.</u>). Mr. Ball then, without any prompt by the agent to his bag or its contents, asked the agent if he wanted to "check the things in [the bag]," and said that the agent was "welcome to have a look." (<u>Id.</u> at 161-162). Together, Mr. Ball and the agent then went through the contents of the bag, which included sexual toys and gifts for the child he believed he was meeting. (<u>Id.</u> at 162-163). Accordingly, Mr. Ball

15

consented to the undercover agent's search of the car and bag, and thus, the search was constitutional. United States v. White, 401 U.S. 745, 749 (1971) ("[H}owever strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities." (citing Hoffa v. United States, 385 U.S. 293, 302 (1966)). Given that moving for suppression of the vehicle and bag's contents would have been futile, Mr. Ball suffered no prejudice from Mr. Louderback having failed to do so. This element of Mr. Ball's claim fails. See Arvelo, 788 F.3d at 1348 ("[B]oth the deficient performance and prejudice prongs of Strickland turn on the viability of the motion to suppress.").

The Court also finds that Mr. Ball suffered no prejudice from Mr. Louderback's failure to move to suppress the iPhone contents. The government had warrants to search the iPhone, iCloud, and Dropbox accounts. (Civ. Doc. # 1-1 at 227, 254, 265). There were no grounds to suppress the evidence, and Mr. Louderback was not ineffective for failing to move for its suppression. See Castillo v. United States, 816 F.3d 1300, 1303 (11th Cir. 2016) ("If a search was constitutional, then counsel is not obligated to move to suppress the evidence or

dismiss the indictment and a defendant is not prejudiced by counsel's failure to do so.").

Next, Mr. Ball's complaint that Mr. Louderback was ineffective for failing to move to suppress his confessions is meritless. Mr. Ball alleges that his confessions were made in violation of his right to counsel. (Civ. Doc. # 12-2 at 16-17). At the beginning of his interrogation, Mr. Ball said that he "would like the possibility of speaking to an attorney" and when asked by the interrogating agent if he would "like to consult with an attorney first," Mr. Ball answered "yes." (Civ. Doc. # 1-1 at 178). The agent then sought clarification if that meant he "[didn't] want to talk to us about anything that's going on today?" (Id.). At that point, Mr. Ball gave an ambiguous answer about how he was unsure, followed by later providing answers to their questions. (Id. at 178-79). Mr. Ball only spoke of his potential desire to stop questioning before meeting with an attorney, but never explicitly requested to stop questioning until he spoke with an attorney. Without a clear request, there was no violation of Mr. Ball's Sixth Amendment right to counsel. See Davis v. United States, 512 U.S. 452, 461-62 (1994) ("If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no

obligation to stop questioning him."). Accordingly, Mr. Ball cannot establish any prejudice from Mr. Louderback's failure to move for suppression of his statements and the Court rejects this aspect of Mr. Ball's claim. See Arvelo, 788 F.3d at 1348 ("[B]oth the deficient performance and prejudice prongs of Strickland turn on the viability of the motion to suppress.").

### C. **Claim 1.3**

Mr. Ball alleges that Mr. Louderback was ineffective for failing to obtain a separate forensic examination of the iPhone, such that he could not challenge the government report's alleged inclusion of duplicate images which led to a higher sentencing enhancement. (Civ. Doc. # 12-2 at 17-18). Mr. Ball's claim fails. As discussed previously, Mr. Ball acknowledges that Mr. Louderback visited law enforcement in possession of the iPhone and viewed the evidence, leading Mr. Louderback to conclude that the evidence was correct. (Id. at 17). In Mr. Ball's account, Mr. Louderback's confidence in the report's accuracy led him to reject Mr. Ball's request to obtain a separate forensic examination. (Id.). Mr. Ball cannot show that "no competent counsel would have taken the action that his counsel did take," as Mr. Louderback had examined the evidence himself and saw no need to challenge

18

its accuracy. <u>Chandler</u>, 218 F.3d at 1315; <u>see</u> <u>also</u> <u>Streeter</u>, 335 F. App'x at 863-64 ("Counsel does not render ineffective assistance by deciding not to pursue a particular line of defense without substantial investigation, so long as the decision was reasonable under the circumstances." (internal quotations omitted)). Accordingly, Mr. Ball has failed to demonstrate that Mr. Louderback's performance was deficient and he cannot establish his ineffective assistance of counsel. The Court denies this claim.

### D. **Claims 1.4 and 1.5**

Mr. Ball raises largely the same argument in both Claims 1.4 and 1.5. Mr. Ball claims that Mr. Louderback failed to explain the elements of both counts of the indictment, and he would have proceeded to trial had he been "made aware that his alleged conduct may not have violated certain elements." (Civ. Doc. # 12-2 at 18-19). He also claims Mr. Louderback was ineffective for failing to seek dismissal of Count One because "none of his alleged conduct occurred in the United States" (<u>Id.</u> at 19-20), specifically arguing that his "act of enticement occurred while [he] was in his private apartment in Dubai" and "the focus of his conduct was not in Florida, but a boat 50 miles out in the Gulf of Mexico." (Civ. Doc. # 21 at 7). This argument fails for both claims.

In his plea agreement, Mr. Ball admitted to flying to Florida, then further coordinating in Florida with the undercover agent, buying sex toys and gifts for the fictitious child in Florida, and ultimately meeting in-person in Florida the agent whom he believed would lead him to the fictitious child. (Crim. Doc. # 36 at 25-27). Given these facts, Section 2422(b) properly applies to Mr. Ball's conduct. See United States v. Strevell, 185 F. App'x 841, 844-45 (11th Cir. 2006) (holding that § 2422(b) applied when defendant made all the arrangements in the United States for a sexual encounter in Costa Rica); United States v. Harris, 991 F.3d 552, 560-61 (4th Cir. 2021) (approving of domestic applications of Section 2422(b) when the defendant is "physically present in the United States when he engage[s] in at least some of his actions in support of the conspiracy").

Thus, Mr. Ball's complaint is that Mr. Louderback did not raise a meritless legal issue. However, "an attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." Pinkney v. Sec'y, DOC, 876 F.3d 1290, 1297 (11th Cir. 2017). Accordingly, it was not ineffective for Mr. Louderback not to seek dismissal of Count One on an unsupported legal argument. To the extent that Mr. Ball's

complaint is that Mr. Louderback did not inform him of a legal argument that was unsupported by the present law, the Eleventh Circuit has "held many times that reasonably effective representation cannot and does not include a requirement to make arguments based on predictions of how the law may develop." Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1334 (11th Cir. 2016) (internal quotations omitted). The Court denies each claim.

Furthermore, Mr. Ball's argument that Mr. Louderback failed to explain the elements of the charges to him fails. Even assuming that Mr. Louderback failed to do so, the plea colloquy cured this error. Judge Sansone engaged in a lengthy explanation of the elements involved for each charge to confirm Mr. Ball's understanding. (Crim. Doc. # 89 at 17-21). In fact, Mr. Louderback directed the court's attention to a nuance within the second element of the second count to ensure that his client was not pleading to the production of child pornography. (Id.). After this nuance was resolved, Mr. Ball then confirmed that he understood the elements of the charges. (Id.). Thus, the plea colloquy assured that Mr. Ball had been explained the elements of his crimes and Mr. Ball thereafter reaffirmed his desire to plead guilty. Therefore, he cannot establish a valid ineffective assistance of counsel claim on

this argument. See United States v. Wilson, 245 F. App'x 10, 12 (11th Cir. 2007) (holding that an effective plea colloquy may cure any ineffective assistance in the explanation of the terms of the plea agreement).

## E. Claim 1.6

Next, Mr. Ball alleges that Mr. Louderback was ineffective for failing to advise him that, as a consequence of his conviction, he would be unable to sponsor an immigration visa for his wife. (Civ. Doc. # 12-2 at 20-21). Mr. Ball did not include this claim in his initial motion, and first made this claim in his amended Motion. (Civ. Doc. ## 1, 12). Mr. Ball had until October 12, 2022, one year after his conviction became final, to file his Section 2255 motion. 28 U.S.C. § 2255(f). He did not file his amended Motion until December 27, 2022, almost two months after the deadline.

This additional claim is barred unless it "relates back" to the claims in his initial motion, which is established "if [it] 'arose out of the conduct, transaction, or occurrence' set forth in his original § 2255 motion." Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000) (quoting Fed. R. Civ. P. 15(c)). Furthermore, "the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing

22

proceedings." Id.; see also Farris v. United States, 333 F.3d 1211, 1215-16 (11th Cir. 2003) (holding that a claim that counsel had failed to advise defendant about certain elements of his sentencing exposure did not relate back to claims of counsel's failure to advise him of other elements of his sentencing exposure).

As Mr. Ball did not raise any issues related to the collateral consequences of his plea in his motion, this additional claim cannot relate back. Thus, the Court denies this claim as untimely.

**F. Claim 1.7**

Mr. Ball also alleges that Mr. Louderback provided ineffective assistance of counsel at sentencing by: (1) failing to file a sentencing memorandum; (2) failing to present mitigating evidence to rebut the government's argument that Mr. Ball had engaged in prior illicit conduct by calling Mr. Ball's wife and friend to testify; and (3) failing to object to the Court's allegedly improper promotion of rehabilitation to justify its sentence. (Civ. Doc. # 12-2 at 21-23).

The Court notes that Mr. Louderback's strategy at the sentencing hearing was to focus on Mr. Ball's acceptance of responsibility and low risk of recidivism. (Crim. Doc. # 84).

Counsel presented expert testimony to attempt to show Mr. Ball's low risk of recidivism. (Id. at 11-13). He also moved for a downward variance based on Mr. Ball's acceptance of responsibility and lack of criminal history (Id. at 66), or in the alternative argued for a sentence at the low end of the guidelines range. (Id.). This strategy was moderately successful, as Judge Kovachevich sentenced him to the low end of the guidelines range. (Id. at 83).

The Court finds that Mr. Louderback's decision not to file a sentencing memorandum was not ineffective. In his affidavit, Mr. Louderback averred that "[he] did not prepare a Sentence Memorandum because [his] prior experience with Judge Kovachevich led [him] to conclude that she did not give such self-serving documents any weight." (Civ. Doc. # 14-1 at 4). Thus, Mr. Louderback made a reasoned strategic decision that filing a sentencing memorandum would be unpersuasive. The Court finds that such a strategic decision does not constitute ineffective assistance here. See Chandler, 218 F.3d at 1314 n. 14 (holding that counsel is not ineffective for choosing to make certain strategic decisions at sentencing and choosing not to make other arguments); Felker v. Thomas, 52 F.3d 907, 912 (11th. Cir. 1995) (holding that

counsel's strategic decision to advance one argument at sentencing over another argument was "entirely reasonable").

Likewise, Mr. Louderback's decision not to call Mr. Ball's wife and friend to testify at the sentencing hearing was not ineffective. Mr. Ball claims that these witnesses would have "present[ed] mitigating testimony that would have rebutted the government's presumption of prior conduct." (Civ. Doc. # 12-2 at 21). First, the Court notes that a letter by Mr. Ball's wife was attached to the presentence report, such that the Court was able to consider his wife's perspective. (Crim. Doc. # 52 at 35-37). Indeed, several letters from Mr. Balls' friends and family were attached to the presentence report. (Id. at 22-44). Second, Mr. Louderback presented significant mitigating evidence at the hearing of Mr. Ball's acceptance of responsibility and low risk of recidivism, and specifically addressed his lack of prior illicit conduct. (Crim. Doc. # 84 at 40). He called Dr. Peter Bursten who, after being qualified as an expert, testified that Mr. Ball only started looking at child pornographic material eighteen months before his arrest, and that his offense conduct was "an escalation in his deviant behavior." (Id. at 39-41). Mr. Louderback was not ineffective for choosing to use Dr. Bursten's testimony to present

mitigating evidence, and not calling Mr. Ball's wife and friend. See Chandler, 218 F.3d at 1319 ("Counsel is not required to present every nonfrivolous defense; nor is counsel required to present all mitigation evidence, even if the additional mitigation evidence would not have been incompatible with counsel's strategy.").

Mr. Ball also misrepresents the justification of Judge Kovachevich for his sentence. Mr. Ball claims that Judge Kovachevich's sentence "was based on the need for rehabilitation." (Civ. Doc. # 12-2 at 22). This entirely ignores her statement at sentencing that her "first responsibility is to protect the community from you." (Crim. Doc # 84 at 81). She then added that his "problem, which is serious, needs treatment long term," and that she had to protect the community during that time. (Id. at 81-82). Judge Kovachevich's justifications were entirely permissible. See Tapia v. United States, 564 U.S. 319, 334 (2011) ("A court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs."). Accordingly, Mr. Ball cannot establish any prejudice from Mr. Louderback's failure to object to a permissible sentence and the Court rejects Mr. Ball's claim. See Ortiz, 2017 WL 6021645, at *2 ("[I]f a claim

26

fails to satisfy the prejudice component, the Court need not make a ruling on the performance component.").

### G. **Claims 2.1 and 2.2**

Mr. Ball alleges that the government violated his due process rights by manufacturing jurisdiction through "trickery" (Civ. Doc. # 12-2 at 23), and violated his Miranda rights (Id. at 23-24). The government responds that these claims are procedurally defaulted because Mr. Ball failed to raise these claims on appeal. (Civ. Doc. # 14 at 14). Mr. Ball replies that he failed to raise these claims on appeal due to ineffective assistance of counsel, as his appellate counsel, Ms. Rachel Reese, advised him that these claims could not be raised on appeal. (Civ. Doc. # 21 at 8-10).

The Court finds that by failing to raise these arguments in his direct appeal, Mr. Ball procedurally defaulted on these claims. See Lynn, 365 F.3d at 1234-35 ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."). Therefore, Mr. Ball must establish either that there is both cause and prejudice for his failures, or that a "constitutional violation has

probably resulted in the conviction of one who is actually innocent." Id.

Mr. Ball claims that he failed to raise these arguments due to ineffective assistance of counsel. (Civ. Doc. # 21 at 8-10). A valid ineffective assistance of counsel claim would constitute cause. See Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) ("A petitioner can establish cause by showing that a procedural default was caused by constitutionally ineffective assistance of counsel under Strickland.").

However, Mr. Ball has not established a valid claim of ineffective assistance of counsel for the failure to raise these two arguments. Even if he had argued on appeal that the government agents engaged in "trickery" of an unconstitutional nature, his claim would have been denied. See United States v. Castaneda, 997 F.3d 1318, 1324 (11th Cir. 2021) ("As for law enforcement's generic sting operation of posting a Craigslist ad and communicating with [the defendant] about his desire to abuse a child, there is no legal basis for challenging as outrageous those commonplace, and common sense, tactics."). Likewise, as the Court discussed previously, Mr. Ball's claim based on supposed Miranda violations is without merit. Accordingly, Mr. Ball

28

suffered no prejudice from Ms. Reese's failure to raise these two arguments on appeal, such that Mr. Ball cannot prove an ineffective assistance of appellate counsel claim. See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) ("Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." (internal quotations omitted)). Accordingly, Mr. Ball cannot establish any cause for his failure to raise these arguments on appeal. See Lynn, 365 F.3d at 1234-35 (requiring both cause and prejudice to excuse a procedural default).

Mr. Ball also cannot meet the second possible exception to a procedural default that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. "[A}ctual innocence means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). Mr. Ball admitted to, and does not attempt to refute now, that he endeavored to sexually assault a seven-year-old, and that he possessed child pornographic pictures and videos. (Crim. Doc. # 36 at 21-27). Thus, the Court does not find that Mr. Ball argues his actual innocence, nor does it find any evidence of actual innocence in the record. Accordingly, Mr. Ball cannot establish the second exception for his procedural default.

Having failed to establish both exceptions for his procedural default, the Court denies Claims 2.1 and 2.2 as procedurally barred.

### H. Claim 2.3

Mr. Ball argues that the government breached the plea agreement by failing to move for an additional one-level downward departure pursuant to U.S.S.G. § 3E1.1.(b) beyond the two-level downward departure for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.(a). (Civ. Doc. # 12-2 at 24). The government responds that this claim is procedurally barred as Mr. Ball failed to raise this argument in his direct appeal. (Civ. Doc. # 14 at 14). Mr. Ball did not address the government's position in his reply. (Civ. Doc. # 21). The Court agrees with the government that the claim is procedurally barred.

By failing to raise this argument in his direct appeal, Mr. Ball procedurally defaulted on this claim. See Lynn, 365 F.3d at 1234-35 ("Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."). Therefore, Mr. Ball must establish either that there is both cause and prejudice for his failure, or that a

"constitutional violation has probably resulted in the conviction of one who is actually innocent." Id.

Contrary to Mr. Ball's assertion, Mr. Ball did receive an additional one-level downward adjustment under U.S.S.G. § 3E1.1.(b). (Crim. Doc. # 52 at 12). Accordingly, Mr. Ball has suffered no prejudice from failing to raise this meritless argument and cannot establish the first exception to the procedural bar. See Lynn, 365 F.3d at 1234-35 (requiring both cause and prejudice to meet the procedural bar exception). As this claim relates to his sentencing, as opposed to his convictions, Mr. Ball also cannot establish the second exception's requirement that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Id.

Having failed to meet both exceptions for his procedural default, the Court denies this claim as procedurally barred. Even if it were not procedurally barred, this claim would fail on the merits because, as mentioned, Mr. Ball did receive the one-level downward adjustment.

## I. **Claim 3.1**

Finally, Mr. Ball argues that 18 U.S.C. § 2422(b) was inapplicable to his conduct because "the alleged conduct Ball pleaded to occurred in Dubai" and "even if any sexual activity

31

were to have occurred, it would have been in international waters." (Civ. Doc. # 12-2 at 25). The government responds that this claim is procedurally barred because he raised this argument on his direct appeal and may not re-litigate his legal arguments in a Section 2255 action. (Civ. Doc. # 14 at 17). Mr. Ball replies that the claim is not procedurally barred because "[t]he Eleventh Circuit did not reach the merits of his claim." (Civ. Doc. # 21 at 10). The Court agrees with the government that the claim is procedurally barred.

"The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. Once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." Nyhuis, 211 F.3d at 1343 (internal quotations and citations omitted). In rejecting Mr. Ball's claim, the Eleventh Circuit held that "[b]ecause neither the Supreme Court nor this Court has addressed whether § 2422(b) extends to conduct occurring outside the United States, and the statute itself does not specifically resolve this issue, we cannot say the district court plainly erred even if it applied the statute extraterritorially." (Crim. Doc. # 111 at 4). Accordingly, the Eleventh Circuit did reach the merits of his claim, applying the appropriate standard for review. See

32

<u>United States v. Straub</u>, 508 F.3d 1003, 1008 (11th Cir. 2007) ("When the defendant does not preserve an argument for appeal, we review for plain error.").

Therefore, Mr. Ball may not now re-litigate this claim in his Amended Section 2255 Motion, and the Court denies this claim as procedurally barred.

**IV.  <u>Evidentiary Hearing</u>**

As the Court has readily concluded that the Motion lacks merit, the Court declines to hold an evidentiary hearing on Mr. Ball's Amended Section 2255 Motion. <u>See</u> <u>Lagrone</u>, 727 F.2d at 1038 (holding that courts need not hold evidentiary hearings in § 2255 actions when the lack of merit is "manifest").

**V.  <u>Certificate of Appealability and Leave to Appeal In Forma Pauperis Denied</u>**

The Court declines to issue a certificate of appealability because Mr. Ball has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2). Nor will the Court authorize Mr. Ball to proceed on appeal in forma pauperis because such an appeal would not be taken in good faith. <u>See</u> 28 U.S.C. § 1915(a)(3). Mr. Ball shall be required to pay the

full amount of the appellate filing fee pursuant to Section 1915(b)(1) and (2).

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   William Brinson Ball's pro se Amended 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 12; Crim. Doc. # 166) is **DENIED.**

(2)   Mr. Ball's original 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Civ. Doc. # 1; Crim. Doc. # 53) is **DENIED** as moot.

(3)   The Clerk is directed to enter judgment for the United States of America and to close this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 24th day of October, 2024.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE